STATE OF CONNECTICUT *v.* ELISHA JENKINS

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued March 11—decided April 8, 1969

*Thomas N. Wies,* for the appellant (defendant).

*Robert K. Walsh,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, *Richard P. Sperandeo* and *David B. Salzman,* assistant state's attorneys, for the appellee (state).

KING, C. J.  The defendant, after a trial to the jury, was convicted of committing, with a knife, an aggravated assault on his wife, in violation of General Statutes § 53-16.

Only two assignments of error are pursued in the brief, each of which involves a ruling on evidence. The state had offered evidence to prove that the defendant and his wife had been living apart for about two years; that on the evening of January 16, 1967, the defendant came to the hall outside his

wife's second-floor apartment and remained there from about 8 o'clock until 11 o'clock; that the wife asked him to leave, but instead of doing so, he entered her apartment; that, after the defendant had blocked his wife's attempts to secure the aid of the police, the wife finally went downstairs to the apartment of her sister, Mrs. Essie Mae Dawson, to telephone the police; and that near the foot of the stairs the defendant made an unprovoked attack upon her with a knife, inflicting wounds requiring some thirty-eight stitches.

Mrs. Dawson testified to the circumstances of the assault; that two police officers arrived and took the defendant into custody; that the wife went upstairs for more clothing; and that about two minutes later she was escorted out of the house by the police to be taken to the hospital.

The state asked the witness what happened then. This question was objected to on the ground that it went beyond the incident of the aggravated assault with which the defendant was charged. The court intimated that the evidence would be admissible as part of the res gestae. The state also claimed the evidence was relevant to show the defendant's state of mind. The court asked how long a time elapsed between the arrival of the police and their starting to escort the wife out of the house to take her to the hospital, and the witness said not more than two minutes. The court then stated that it would admit the question.

Thereupon the witness answered, over objection, that the defendant made a break to grab his wife as the police escorted him past her on the street outside; that, when the police tried to catch him, the defendant turned on the officer, grabbed him by the throat and started beating him; and that the defend-

ant was finally subdued by the two officers after he had been hit on the head twice with a nightstick.

The second ruling was similar to the first. Joseph DePalma, one of the two police officers at the scene, was called as a witness and testified that he took the defendant into custody and remained with him outside the apartment house until the defendant caught sight of his wife. He was then asked what the defendant did and, over objection that the testimony was irrelevant, testified that the defendant attempted to assault his wife and did assault another police officer who was protecting the wife and then assaulted the witness, who came to the aid of the officer engaged in protecting the wife.

The claim of the defendant is that evidence of the subsequent assaults on the wife and on the police officers protecting her was inadmissible since it was in proof of unconnected crimes. A statement of the rule is given in *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649, as follows: "The argument against admitting evidence of other similar but unconnected crimes is not that it has no probative value. As Wigmore said: 'It is objectionable, not because it has no appreciable probative value, but because it has too much' (§ 194); meaning, of course, that its appeal is not confined to the intellect or to the precise issue. Such evidence, when offered in chief, violates the rule of policy which forbids the State initially to attack the character of the accused, and also the rule of policy that bad character may not be proved by particular acts. Wigmore, § 57. These two rules of policy are firmly established, and they mark one important difference between the Anglo-American criminal procedure and the French. On the other hand, evidence of crimes so connected with the principal crime by circumstance, motive,

design, or innate peculiarity, that the commission of the collateral crime tends directly to prove the commission of the principal crime, or the existence of any essential element of the principal crime, is admissible. The rules of policy have no application whatever to evidence of any crime which directly tends to prove that the accused is guilty of the specific offense for which he is on trial. The objection on the ground of policy applies exclusively to evidence of crimes which are logically unconnected with the principal crime. This is to say, to evidence the probative effect of which is indirect, in the sense that its direct application is exhausted in showing that the accused was possessed of a bad character or of a disposition to commit the particular crime of which he is accused, and thereby it furnishes a justification for a conviction rather than proof of guilt of the specific offense." See also 29 Am. Jur. 2d 366–372, Evidence, §§ 320–321; McCormick, Evidence § 157; 1 Wigmore, Evidence (3d Ed.) § 216. A collection of cases involving the rule may be found in annotations in 93 L. Ed. 185 and 170 A.L.R. 306. A more modern, and probably better, statement of the rule is given in rule 311 of the Model Code of Evidence to the effect that "evidence that a person committed a crime . . . on a specified occasion is inadmissible as tending to prove that he committed a crime . . . on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime . . . or to commit crimes . . . generally."

This rule seems to be the one applied in the second circuit. See cases such as *United States* v. *Deaton*, 381 F.2d 114, 117 (2d Cir.). And its principle, at least, seems to have been favored by Wigmore. 1 Wigmore, loc. cit. Although under either statement

of the rule the evidence of the subsequent assaults was not relevant to prove the specific assault, as such, with which the defendant was charged, it would be relevant, and therefore admissible, as hereinafter more particularly explained, on the issue of self-defense if that issue was then in the case.

The court made use of the term "res gestae" which is an unfortunate term because of its lack of any precise meaning. See, for instance, Morgan, "A Suggested Classification of Utterances Admissible as Res Gestae," 31 Yale L.J. 229; 1 Wigmore, op. cit. § 218, p. 722; 1 Wharton, Criminal Evidence (12th Ed.) § 279, p. 630. Here, however, it is clear that the court, in intimating that the evidence of the subsequent attempt to assault the wife was part of the res gestae, was not referring to an utterance of any kind but meant that the proffered evidence was part of the whole crime of aggravated assault on his wife on which the defendant was tried. This is referred to by Wharton as "the relevant evidence concept" of the term res gestae. 1 Wharton, loc. cit.; see also McCormick, Evidence § 157, subdivision (1), p. 328. As already pointed out, the state claimed the evidence on the additional ground that it was indicative of the state of mind of the defendant.

The state had the burden of proving, beyond a reasonable doubt, the essential elements of the crime charged. Since self-defense is inconsistent with guilt of aggravated assault, if any evidence had come into the case, whether or not offered by the defendant, on which a reasonable doubt as to self-defense could be predicated, the state had the burden of negating self-defense as incident to its overall burden of proving guilt beyond a reasonable doubt.

In the instant case, the defendant gave the state no intimation as to whether he would take the stand

or even offer any evidence. Nor did he object to the state's proffered evidence on the ground that it should have been reserved until rebuttal, if it then seemed relevant to support the state's case and really needed for that purpose. See cases such as *State* v. *Gilligan,* 92 Conn. 526, 537, 103 A. 649; *United States* v. *Byrd,* 352 F.2d 570, 574 (2d Cir.), as explained in *United States* v. *Deaton,* supra, 118 n.3.

Actually, the defendant finally chose to take the stand in his own defense but called no other witnesses. The basic defense of the defendant turned out to be self-defense, he claiming that his wife had attacked him with the knife and that he finally succeeded in getting it away from her. The defendant also claimed that in the struggle, which broke the glass in the front door, at least some of the wife's cuts came from broken glass rather than from the knife and that any injuries she sustained were unintended and accidental. Thus, the issues of self-defense and accidental injury were clearly and unequivocally injected into the case by the defendant himself.

It is true that where, as turned out to be the case here, the defendant takes the stand, or offers evidence, and claims self-defense, the state would have the opportunity, in rebuttal, to put in evidence negating self-defense and that such would be the proper and orderly course to pursue. *Shulman* v. *Shulman,* 150 Conn. 651, 659, 193 A.2d 525; *Finch* v. *Weiner,* 109 Conn. 616, 619, 145 A. 31. This practice is approved in *State* v. *Gilligan,* supra. See also McCormick, Evidence § 4, p. 6. No such claim as this, however, was raised by the defendant, and under the particular circumstances obtaining here the objection was wholly inadequate to alert the

court to the fact that the objection was to the admission of the testimony in the state's case in chief. If at that point the state had already presented evidence which could warrant a reasonable doubt as to the issues of self-defense and accidental injury and the defendant subsequently rested without offering evidence, the state would be left without evidence negating the claim of self-defense, if it was first raised by the defendant in argument. The objection as made gave no hint to the court whether or not the defendant then was contending that the state's evidence would not warrant a claim that there was a reasonable doubt as to the issues of self-defense and accidental injury. Indeed, the finding does not indicate that the court was given notice of any claim based on the *Gilligan* rule.

A further reason for requiring clarity in stating the ground of objection was that, in the light of the state's case, about the only theory which could offer any hope to the defendant was a claim of self-defense so that the issue was, practically speaking, necessarily in the case from the beginning.

Another important circumstance is that the state had considerable ground for believing that the defendant would not take the stand, since he had been previously convicted of an aggravated assault. This prior conviction was set forth in a second part of the information and, after the conviction of the defendant on the aggravated assault charge, was admitted by him through a plea of guilty, under the procedure in Practice Book §§ 522 and 487. This conviction, of course, was admissible under General Statutes § 52-145 to affect the credibility of the defendant, if he took the stand. *Heating Acceptance Corporation* v. *Patterson,* 152 Conn. 467, 472, 208 A.2d 341; *State* v. *Walters,* 145 Conn. 60, 67, 138

A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45.

The real claim in the defendant's brief as to both rulings was, not that the state was erroneously permitted to offer rebuttal evidence in its case in chief, but that the evidence of the subsequent assault upon his wife and his assaults on her protectors was irrelevant on the issue of self-defense because it no more tended to prove that the defendant was the aggressor, at the time of the original assault, than that he had become angry at his wife, after the police arrived, because she had had him arrested for an unprovoked assault on her, when he claimed that in fact he was acting in self-defense and that any injury to the wife was accidental. While the motivation for the second assault on the wife and the assaults on the officers protecting her could conceivably have been as the defendant claimed, we think it far more probable that these assaults tended to prove that the defendant had malice and ill-will toward his wife, that he, rather than she, was the aggressor and that his claims of self-defense and accidental injury were unfounded in fact.

Furthermore, the exclusionary rule, as pointed out in *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649, is one of policy and has no application whatever to evidence of any crime which directly tends to prove the existence of any essential element of the specific crime charged. In other words, if the evidence, even though of a separate and unconnected crime, is relevant and material in proof of the crime charged or any essential element of it, it is admissible. *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399; *State* v. *Palko,* 122 Conn. 529, 537, 191 A. 320; *State* v. *Simborski,* 120 Conn. 624, 630, 182 A. 221.

An essential element of the state's case, at least after the defendant had offered evidence in proof of an issue of self-defense, was that the defendant acted, not in self-defense as he claimed, but as the aggressor. Self-defense having come into the case, the original evidential rulings, even if technically erroneous when made, became harmless. The subsequent assaults on the wife and on the two police officers attempting to protect her were, for the reasons hereinbefore stated, admissible as indicating that his claims of self-defense and accidental injury were unfounded.

It is unnecessary to determine whether the rulings could also be supported under the res gestae rule in the sense in which the court used the term.

There is no error.

In this opinion the other judges concurred.