## STATE OF CONNECTICUT *v.* RICHARD HAUCK

HOUSE, C. J., LOISELLE, BOGDANSKI, BARBER and MACDONALD, Js.

Argued October 6—decision released December 28, 1976

*Walter R. Budney,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John T. Redway,* assistant state's attorney, for the appellee (state).

MacDONALD, J. On a trial to a jury, the defendant was found guilty of two counts of injury or risk of injury to a minor child in violation of § 53-21 of the General Statutes. On appeal, four of the issues covered by the defendant's preliminary statement are being pursued, namely: (1) whether the court erred in allowing the state to present evidence of other crimes allegedly committed by the defendant; (2) whether the court improperly limited the defendant in his cross-examination of the complaining witness; (3) whether the court erred in allowing the jury to hear tape recordings of conversations between the defendant and the complainant; and (4) whether the court erred in denying the defendant's motion for a supplemental bill of particulars. In order adequately to consider these claimed errors, it is necessary to summarize only the following facts as to which the state produced evidence as set forth in the statements of facts printed in the briefs.

The complaining witness, a minor under the age of sixteen years who shall be referred to simply as Janet, while attending the seventh and eighth grades at the John F. Kennedy Junior High School in Milford, had the defendant, Richard Hauck, as a science teacher. In November, 1971, while discussing her work and grades with her, the defendant

told Janet he would give her a "C" in science if she would allow him to photograph her. As a result of this conversation, at various times during the school year ending in 1972, sometimes once or twice a week, the defendant took Janet into the science storage room at the school, locked the door, closed the blinds, instructed her to disrobe and photographed her. On one of these occasions, the defendant touched her private parts and on another occasion took her to a room in a motel and took nude or seminude pictures of her. At the end of the school year, Janet received a "C" in science and told the defendant that she would not pose for any more pictures. During the following school year, some of the pictures turned up at the school and the assistant principal showed some of them, which had come into her possession, to Janet's mother. As a result, Janet related the foregoing story to her mother and, thereafter, to the Milford police.

Pursuant to a plan arranged by the police, Janet, with a microphone concealed on her person, had a conversation with the defendant in the school parking lot during which they discussed the pictures. A portion of that conversation was recorded by the police on tapes which were later played during the trial to the jury. Many parts of the conversation reproduced on the tape recording tended to corroborate Janet's story, as did portions of a telephone conversation between Janet and the defendant recorded by the police and played to the jury. When the defendant was arrested during a meeting with Janet, also arranged by the police, a search of his car disclosed a Polaroid camera and some nude photographs, and a search of his home in Old Saybrook, made pursuant to a search warrant, turned up approximately fifty photographs of Janet posed

while partially unclothed in the science classroom of the defendant, together with several similar photographs taken in a motel room.

The first claim of error arises from the court's permitting the state to present evidence of other crimes allegedly committed by the defendant with which he was not charged in this case but which the state claimed to show "a common scheme, design or innate peculiarity" in the crime under consideration. The evidence here under attack was testimony elicited from another girl under the age of sixteen years to the effect that during the same school year and the same period of time covered by the information the defendant had been her science teacher at the John F. Kennedy Junior High School in Milford; that during that period, the defendant, on at least five occasions, having requested her to come to his desk to look at some papers, had placed his leg between her legs and that on one such occasion he had placed his hand on her thigh; that at the end of her seventh-grade year he told her that if she stayed after school every day he would give her a passing grade as long as she consented to his touching her in that manner. Timely objection was made to the introduction of this testimony.

We have had occasion recently to discuss at length the general rule that prior criminal misconduct may not be shown to prove the bad character of an accused or his tendency to commit criminal acts, together with the well-recognized exceptions to that rule, and to review the pertinent authorities. "This court has long recognized the danger of prejudice against the defendant which may result from the admission of such evidence. *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649. 'As a general rule, evidence of guilt of other crimes is inadmissible to

prove that a defendant is guilty of the crime charged against him.' *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368, quoting from *State* v. *Harris,* 147 Conn. 589, 599, 164 A.2d 399. Such evidence is admissible for a variety of other purposes, however, such as 'when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive, a system of criminal activity. . . .' [Citations omitted.] 'That evidence tends to prove the commission of other crimes by the accused does not render it inadmissible if it is otherwise relevant and material; *State* v. *Marshall,* 166 Conn. 593, 600, 353 A.2d 756; *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368; see *State* v. *Jenkins,* 158 Conn. 149, 152–53, 157, 256 A.2d 223; and if the trial judge determines in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. *State* v. *Moynahan,* 164 Conn. 560, 597, 325 A.2d 199 [cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219]; *State* v. *Holliday,* supra, 173.' *State* v. *Ralls,* 167 Conn. 408, 417, 356 A.2d 147. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. *DiPalma* v. *Wiesen,* 163 Conn. 293, 298, 303 A.2d 709. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. *Thomas* v. *Thomas,* 159 Conn. 477, 480, 271 A.2d 62; 1 Wharton, Criminal Evidence (13th Ed.) § 241. In balancing the grounds advanced by the state for the admission of the evidence against the grounds advanced by the defendant for excluding it, we cannot say that as a matter of law the court abused its discretion in allowing the question to be answered." *State* v. *Brown,* 169 Conn. 692, 700–702, 364 A.2d 186.

An examination of recent decisions in other jurisdictions indicates a greater liberality in admitting evidence of other criminal acts to show a common scheme, pattern or design in sex-related crimes. In *People* v. *Mendoza,* 37 Cal. App. 3d 717, 112 Cal. Rptr. 565, where a man was charged with committing a lewd attack on a thirteen-year-old boy, evidence of a similar sexual offense under similar circumstances against another thirteen-year-old boy was ruled admissible, the court stating (p. 723): "Evidence of another sex offense is admissible to show a common scheme or plan if the offense is proximate in time, similar to the offense charged, and committed with persons similar to the prosecuting witness. . . . Admissibility lies within the sound discretion of the trial court . . . and we see no abuse of discretion here. The prior act is not too remote in time." See *State* v. *Thomas,* 110 Ariz. 106, 108, 515 P.2d 851; *Fields* v. *State,* 255 Ark. 540, 554–55, 502 S.W.2d 480; *Thompson* v. *State,* Ind. App.    , 319 N.E. 2d 670, 671; *State* v. *Hampton,* 215 Kan. 907, 529 P.2d 127; *Hendrickson* v. *State,* 61 Wis. 2d 275, 212 N.W.2d 481.

While not previously called upon to decide the precise issue raised here, this court did indicate, in a case having many similarities to the one now before us, that it would consider the question of the introduction of other crimes evidence in a sex-related case if properly presented on appeal. In *State* v. *Manning,* 162 Conn. 112, 291 A.2d 750, a teacher of a junior high school was charged with four counts of risk of injury to a minor child in committing unspecified indecent assaults upon one of his students. The trial court admitted testimony of two former pupils of the defendant as to similar acts to show, inter alia, a common

design in the manner in which the acts were committed. On appeal, the defendant claimed, as here, that such evidence violated the other crimes rule, but since he had not raised that specific objection during the trial, it was not ruled upon. We did, however, observe (p. 119) that "[t]he defendant's brief claims that the testimony of the two girls should not have been admitted because it contained evidence of unrelated criminal acts which may not be admitted to prove the commission of the one charged. The defendant did not object on this ground. The first statement of the court quoted above indicates that it was well aware of the general rule that such evidence was not admissible, but it is also apparent that the court was concerned with whether the offered testimony might fall within an exception to the general rule. See *United States* v. *Deaton,* 381 F.2d 114 (2d Cir.); *State* v. *Holliday,* 159 Conn. 169, 172, 268 A.2d 368; *State* v. *Jenkins,* 158 Conn. 149, 157, 256 A.2d 223. The court informed counsel of its concern and, in effect, advised counsel that objection should be made if such testimony was not within any exception to the general rule."

Here, the state's claim that there was a common scheme or design was based upon the fact that both crimes, the one before the court and the one not charged in the information, involved a teacher using his position of authority to obtain or to seek to obtain sex-related favors in return for a passing grade in his science course; that the acts in both instances took place during the lunch hour or after school in the defendant's science classroom after a minor female student had come to the defendant for extra work to obtain a better grade; and that these incidents were occurring at frequent intervals

during approximately the same period of time. As
we stated in *State* v. *Marquez,* 160 Conn. 47, 52, 273
A.2d 689: "The trier is often called upon to weigh
the question whether the prejudicial tendency of
evidence outweighs its probative value. In a crimi-
nal trial, evidence which tends to prove the commis-
sion of other crimes by the accused does not render
it inadmissible if it is otherwise relevant and ma-
terial. . . . It is enough to say that the trial judge
is the arbiter of the many circumstances which may
arise during a trial in which his function is to assure
a fair and just outcome." The court did not abuse
its discretion in admitting the testimony in question
and thereafter, in its charge to the jury, properly
instructed them that the other crimes evidence was
to be considered only to show a circumstance, design
or innate peculiarity in the two different crimes to
justify the indication that the commission of one
would "tend to directly affect the principal crime,"
and that it was not to show that the defendant was
of bad character.

The next assignment of error pursued by the
defendant is his claim that the court improperly
limited his cross-examination of the complaining
witness. During his lengthy cross-examination of
Janet, defense counsel was permitted to make
exhaustive inquiry into the basic facts of her testi-
mony and as to her credibility as a witness. The
only question disallowed by the trial court was the
one complained of here referring to a boy named
"Dewie" who had been mentioned during Janet's
testimony. Without laying any foundation as to
time or place, counsel abruptly asked, "[a]nd did
you have any sexual experiences with this boy?"
The court sustained the state's objection to this
question and it was not answered. In attacking the

court's ruling on this appeal, the defendant makes the claim, for the first time, that the groundwork for the question had been set by the state's questions of the witness concerning her religious background. The propriety of the state's inquiries has not been questioned on appeal, and the only claim now urged by the defendant is that once the door had been opened by the state as to Janet's religious background, he was entitled to inquire into possible sexual activities on her part. This claim was never made before the trial court during a prolonged argument by defense counsel, and the state correctly argues that the grounds for objection on appeal differ from those stated at the time of trial. "To assign error in the court's evidential ruling on the basis of objections never raised at the trial amounts to trial by ambuscade of the trial judge. . . . This court is not bound to consider claims of law not made at the trial . . . and . . . the record discloses . . . no prejudice to the defendant [that] can be claimed to constitute 'exceptional circumstances' as discussed in *State* v. *Evans,* 165 Conn. 61, 69–71, 327 A.2d 576, to require our consideration of the ground for objection now urged for the first time." *State* v. *Rado,* 172 Conn. 74, 81, 372 A.2d 159.

It is difficult to understand the basis for the defendant's claim that the court erred in permitting the jury to listen to tape recordings of a conversation between Janet and the defendant, which was monitored by the police. His basic contention appears to be that the recording was, in his own words, "fuzzy, inaudible, garbled and fragmentary, and not properly authenticated." After Janet had testified as to her recollection of the conversation, the state conducted an extensive voir dire, in the absence of the jury, as to the authenticity and chain

of custody of the tapes. By agreement of the parties, the trial transcript of the recordings was prepared from only those portions which were audible and that transcript was made available to assist the jury after being entered into evidence. Not only did defense counsel not object to the jury's use of the transcripts and their introduction into evidence but he even went so far as to state in open court, "I am satisfied that what was said on those tapes which could be recorded has been recorded; and possibly accurately." At another point, he stated that he would have no objection to playing the tapes to the jury without the transcript.

The use of transcripts to supplement a tape recording as an aid to the jury is a widely accepted practice. See *United States* v. *Marrapese,* 486 F.2d 918, 921 (2d Cir.); *United States* v. *Bryant,* 480 F.2d 785, 789–91 (2d Cir.); *Fountain* v. *United States,* 384 F.2d 624, 632 (5th Cir.). This court, without directly ruling upon an objection to the procedure, has impliedly approved the entry of both a tape recording and a transcript thereof into evidence. See *State* v. *Mortoro,* 160 Conn. 378, 381–82, 279 A.2d 546; *State* v. *Tropiano,* 158 Conn. 412, 420, 262 A.2d 147, cert. denied, 398 U.S. 949, 90 S. Ct. 1866, 26 L. Ed. 2d 288. Apparently, the defendant contests only the actual playing of the tapes before the jury on the ground that the recording was so defective as to mislead the jury in some unspecified prejudicial manner. The determination of this question was, necessarily, within the discretion of the trial court which will be overturned only for abuse. *United States* v. *Bryant,* supra; *United States* v. *Avila,* 443 F.2d 792, 795–96 (5th Cir.); *United States* v. *Weiser,* 428 F.2d 932, 936–37 (2d Cir.); *United States* v. *Knohl,* 379 F.2d 427, 440 (2d Cir.); *Addi-*

*son* v. *United States,* 317 F.2d 808, 815 (5th Cir.). In the light of the precautions taken here, and the apparent approval by the defendant of the procedure followed, as disclosed by the record, we find no abuse of the court's discretion.

The final claim of error pursued by the defendant is in the denial of his motion for a supplemental bill of particulars. The record indicates that, in response to the court's granting of the defendant's motion for a bill of particulars addressed to the original short-form information, the state limited the starting point of the acts complained of to November 11, 1971, and alleged that they continued "on or about divers dates" between that time and June, 1972. This was in compliance with the court's order that the state "comply in furnishing the exact date or dates to the best of its ability from November, 1971, through June, 1972."

The offenses charged here were obviously of a continuing nature and it would have been virtually impossible to provide the many specific dates upon which the acts constituting the offenses occurred. The general rule is that where time is not of the essence or gist of the offense, the precise time at which it is charged to have been committed is not material. See 41 Am. Jur. 2d, Indictments and Informations, § 115, and authorities therein cited. In *United States* v. *Wells,* 180 F. Sup. 707 (D. Del.), the court interpreted Rule 7 (c) of the Federal Rules of Criminal Procedure, providing that an indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged, as not requiring that it state the exact dates when such dates are not an essential element of the offense, which, in that case, was the knowing transportation of obscene film in interstate

commerce. Section 514 of the Connecticut Practice Book states: "The allegation in an . . . information that the accused committed the offense shall in all cases be considered an allegation that the offense was committed after it became and while it was an offense and before the . . . filing of the information."

The reluctance of the court to force the state to furnish the exact dates of the many continuing acts of the defendant during the approximately seven-month period covered by the information and which were claimed, in toto, to have constituted "injury or risk of injury to a minor child" was shown to be clearly reasonable by the testimony at the trial. A motion for a bill of particulars is addressed to the sound discretion of the trial court. *United States* v. *Gray,* 464 F.2d 632, 635 (8th Cir.); *Wong Tai* v. *United States,* 273 U.S. 77, 80–81, 47 S. Ct. 300, 71 L. Ed. 545; *State* v. *Beaulieu,* 164 Conn. 620, 624, 325 A.2d 263; *State* v. *DiBella,* 157 Conn. 330, 339, 254 A.2d 477. The defendant has the burden of clearly showing on appeal why the additional particulars requested by him were necessary to the preparation of his defense. *State v. DiBella,* supra, 339; *State* v. *Curtis,* 146 Conn. 365, 367, 151 A.2d 336. It has been stated that an abuse of discretion in the denial of a motion for a bill of particulars can be premised only upon a clear and specific showing of prejudice to the defense; *State* v. *Curtis,* supra, 368; see *United States* v. *Addonizio,* 451 F.2d 49, 64 (3d Cir.); and the defendant has not made reference in his brief to any claim of prejudice arising from the denial of his motion.

There is no error.

In this opinion the other judges concurred.