## STATE OF CONNECTICUT *v.* MELVIN E. KNIGHTON (2528)

HULL, SPALLONE and DALY, Js.

Argued January 15—decision released April 29, 1986

*F. Mac Buckley,* for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, with whom, on the brief, were *Warren Maxwell,* assistant state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

HULL, J. The defendant was indicted for the crime of murder, a violation of General Statutes § 53a-54a, and was convicted, after a trial to a jury, of manslaughter in the first degree in violation of General Statutes § 53a-55.[1] He now appeals from his judgment of conviction claiming that the trial court erred in some of its evidentiary rulings, in several aspects of its charge to the jury and in its denial of his motion for judgment of acquittal. We conclude that the trial court's actions were correct and, accordingly, we find no error.

The following testimony and facts are relevant to a discussion of the issues the defendant raises on appeal. On the evening of March 22, 1980, the defendant shot the victim, William "Micky" Mathis, to death. Earlier in the day, the defendant had been at Players After Dark, a nightclub in Hartford. While at the club, the defendant was accosted in a hostile manner by Mathis, a man known in the community to be violent. Both men left the bar after this confrontation. Later in the evening, Mathis returned, and sometime after that the defendant also returned. The testimony at trial conflicted as to whether the defendant approached Mathis on his own initiative or whether he was called over by Mathis. Equally disputed is what happened once the defendant reached Mathis. At trial, the defendant con-

---

[1] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

tended, and offered testimony to show, that the victim was about to draw a gun and that he shot the victim solely to protect himself. Other witnesses testified that they did not see Mathis reach for a gun and one witness testified that he saw Mathis with his hands in the air just prior to the shooting. What is clear, however, is that the defendant went over to where Mathis was standing, drew a gun and shot Mathis four times. After the shooting, the defendant left the bar. Minutes later, he was admitted at St. Francis Hospital and treated for a gunshot wound to his left leg which he had apparently inflicted on himself when he shot the victim.

The defendant claims on appeal that the trial court erred in seven respects: (1) in limiting his cross-examination of one of the state's key witnesses; (2) in charging the jury that it could consider whether, by leaving the scene of the shooting, the defendant had displayed consciousness of guilt; (3) in refusing to admit evidence of violent acts Mathis allegedly committed, to show his propensity for violence and to show the defendant's state of mind; (4) in refusing to charge the jury that the state was required to show as part of its "prima facie" case that the defendant did not act in self-defense; (5) in charging the jurors on recklessness and on the defendant's duty to retreat prior to using deadly force; (6) in charging the jurors that they could consider manslaughter in the first degree as a lesser included offense of murder; and (7) in finding that the state had put on sufficient evidence to withstand a motion for judgment of acquittal.

The defendant first challenges the trial court's limitation of his cross-examination of one of the witnesses. The state called the owner of Players After Dark who was present in the club on the night of the shooting. The owner testified that he saw the defendant approach Mathis without invitation and, contrary to the defend-

ant's claim that Mathis was reaching for a gun when he shot him, Mathis' hands were in the air. The defendant sought to impeach the owner's visual acumen by cross-examining him about an event that had occurred one or two months prior to the shooting. The state objected and the defendant made an offer of proof to the effect that the witness had, during a break-in at the bar, twice shot at and missed an intruder who was only eight to ten feet away from him. The court excluded the evidence as irrelevant, and the defendant excepted.

The defendant asserts that the trial court should not have limited his cross-examination of the owner. In pressing his argument, however, the defendant cites no legal authority for his claim. Nor does he refer to any standard by which the trial court's actions should be tested. His brief contains nothing more on this point than an unsupported contention that the trial court erred. Our Supreme Court, when faced with similar circumstances, held that the bare assertion of error without citation to legal authority may constitute an abandonment of the claim. *Rodriguez* v. *Mallory Battery Co.*, 188 Conn. 145, 148-49, 448 A.2d 829 (1982). Accordingly, we consider this ground of error to be abandoned, and decline to review it.[2]

---

[2] We have, however, conducted a limited review solely to determine whether any injustice was done to the defendant. It was not. The essence of the sixth amendment confrontation requirement, that the defendant be permitted to expose the jurors to facts sufficient to allow them to test a witness' credibility; *State* v. *Castro*, 196 Conn. 421, 425, 493 A.2d 223 (1985); was satisfied here. While the defendant was not allowed to elicit testimony concerning the break-in, he was allowed to question the owner about his visual ability. The witness admitted that he had cataract surgery between the time of the shooting and the time of the trial, and he also testified that he could have had a cataract in one eye at the time of the shooting. On the basis of this evidence, the jurors were able to evaluate the witness' ability to see the events that led to the shooting.

Once sixth amendment concerns have been satisfied, limitation on cross-examination is within the discretion of the trial court. Id., 424. " 'It is a

The defendant's second claim is that the trial court erred by twice charging the jurors that they could infer that the defendant, by leaving the club after the shooting, had displayed consciousness of guilt. In its original charge, the trial court instructed the jurors that if they found "that the defendant had fled from the scene to avoid detection," then they could consider the legal principle of consciousness of guilt. That principle, the court charged, "applies when a defendant does an act from which one can infer that he had attempted to avoid detection or avoid facts which would lead to his conviction, as being a consciousness of guilt." The defendant excepted to this portion of the charge. During deliberation, the jurors requested further instruction on the possible verdicts and also on retreat and intent. The trial court recharged the jurors on the topics they had requested, and, in so doing, again instructed on consciousness of guilt. The defendant again excepted. The defendant argues that the charge was inappropriate because his conduct equally could have supported a completely innocent inference: that he left merely to get medical attention.

As with his first ground of error, the defendant does not refer to any legal authority in support of this claim. Nor did the defendant raise the particular ground he now asserts, ambiguity as to the reason for his flight, during his exceptions to the trial court's charge. Rather, the defendant then objected and excepted on the basis that the state never indicated that it would request a consciousness of guilt charge, and thereby prevented him from introducing evidence to show that his flight

reasonable exercise of judicial discretion to exclude . . . evidence the relevancy of which appears to be so slight and inconsequential that to admit it would distract attention which should be concentrated on vital issues of the case.' " (Citation omitted.) *State* v. *Talton,* 197 Conn. 280, 284-85, 497 A.2d 35 (1985). The evidence the defendant sought to admit was of such a nature, and the trial court did not abuse its discretion by excluding that evidence.

was completely innocent. Because the defendant's exception during trial did not properly advise the court of the ground of error he now raises; see *State* v. *Carter,* 198 Conn. 386, 395–96, 503 A.2d 576 (1986); *State* v. *Alston,* 5 Conn. App. 571, 574–75, 501 A.2d 764 (1985); and because he cites no legal authority in support of this claim; *Rodriguez* v. *Mallory Battery Co.,* supra; we decline to consider it.[3]

The defendant's third claim, which he did preserve and present properly, is that the court erred in refusing to allow either a police officer or the defendant to testify about specific acts of violence Mathis allegedly committed. According to the defendant, the officer's testimony should have been admitted to show the victim's propensity for violence, and his own testimony should have been admitted to show his state of mind when he confronted Mathis in the club. The state argues that the court did not err in excluding this evidence.

Where the accused in a homicide prosecution claims that he killed the victim in self-defense, he may introduce evidence of the victim's violent character to attempt to show that the victim was the aggressor.

---

[3] We note that even if the defendant had properly presented this claim of error, he would not have prevailed. It is well settled that " '[t]he [unexplained] flight of the person accused of crime is a circumstance which, when considered together with all the facts of the case, may justify an inference of the accused's guilt.' " *State* v. *Rosa,* 170 Conn. 417, 433, 365 A.2d 1135, cert. denied, 429 U.S. 845, 97 S. Ct. 126, 50 L. Ed. 2d 116 (1976). The fact that flight is susceptible of an innocent explanation does not make *evidence* of flight inadmissible. *State* v. *Piskorski,* 177 Conn. 677, 722–23, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Nor should any such ambiguity render a charge on flight as consciousness of guilt inappropriate. Rather, the existence of any ambiguity or explanation "simply constitutes a factor for the jury's consideration. *People* v. *Yazum,* 13 N.Y.2d 302, 304–305, 196 N.E.2d 263 [246 N.Y.S.2d 626 (1963)]; 1 Wharton, [Evidence (2d)] § 214; 29 Am. Jur. 2d, Evidence § 280." *State* v. *Piskorski,* supra. Here, the court properly instructed the jurors that they could draw an inference of guilt only *if* they first found that the defendant had fled to avoid detection.

*State* v. *Miranda*, 176 Conn. 107, 109-11, 405 A.2d 622 (1978). Similarly, a defendant may, if he first shows that he was aware of the victim's violent nature, introduce such evidence to show his own state of mind at the time he confronted the victim, and thereby show the reasonableness of his belief that the use of force was necessary. Id., 109. A victim's violent character may be proven by reputation or opinion evidence or by evidence showing convictions for crimes of violence. Id. It may not, however, be proven by evidence of other specific acts. Id., 112-13. The defendant acknowledges this principle but argues that the policy reasons behind this rule—to avoid surprise, prejudice, confusion, and undue delay—would not have been abridged in this case by admitting the evidence. He asserts that the trial court therefore erred by excluding the evidence.

The defendant is correct that the rule prohibiting the admission of evidence of specific acts of violence was motivated by the policy reasons he lists. Id. He is incorrect, however, in claiming that an exception to this rule applies where these reasons are absent. Our Supreme Court addressed this issue recently and recognized no such exception. Rather, it stated unequivocally that "[e]xcept where character is directly in issue, a person's violent character may not be established by evidence of specific acts. *State* v. *Miranda*, supra, 112." *State* v. *Gooch,* 186 Conn. 17, 21, 438 A.2d 867 (1982). It is not, in light of *State* v. *Gooch,* supra, and *State* v. *Miranda,* supra, proper for this court to create an exception to this rule as urged by the defendant. See *O'Connor* v. *O'Connor,* 4 Conn. App. 19, 20, 492 A.2d 207 (1985).[4] We decline to do so.

---

[4] We note that the defendant was able to introduce extensive evidence on the issues of Mathis' violent character and his own state of mind regarding the threat Mathis posed to him. Joan Smith, the barmaid at the club who had lived with Mathis for four or five months, Jose A. Zaporta, a friend of both the defendant and Mathis, Robert Cady, who knew both men, and Detective Madison Bolden of the Hartford police department all were per-

In his fourth claim, the defendant argues that the court erred in its charge on self-defense as a justification for the homicide.[5] The substance of this argument is unclear. It appears, however, that the defendant is not contending that the trial court stated the law incorrectly, but rather that it did not properly emphasize

mitted to testify that Mathis had a reputation in the community for being a violent person and that in each of their opinions he was a violent person. Zaporta, Cady, and Smith also testified that Mathis was in the habit of carrying a gun. The defendant testified that he was aware that the victim had a reputation in the community as a "gunslinger," and that, in his opinion, the victim was a "gunslinger." He testified that his opinion was based both on things he had seen the victim do and on things the victim told him he had done. Accordingly, the jurors had extensive evidence from which to evaluate the defendant's claim that Mathis was the aggressor.

[5] General Statutes § 53a-19 governs the use of self-defense. It provides: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

the state's burden of disproving the defendant's claim of self-defense. This argument is without merit. A party is not entitled to a charge which is "beyond criticism in every particular. *State* v. *Kurvin,* [186 Conn. 555, 561, 442 A.2d 1327 (1982)]." *State* v. *Harman,* 198 Conn. 124, 134, 502 A.2d 381 (1985). Rather, a charge is adequate if it is "legally correct and present[s] the case to the jury in a just and fair manner." *State* v. *Candito,* 4 Conn. App. 154, 160, 493 A.2d 250 (1985). This standard was satisfied by the trial court's instructions.

Once "any evidence ha[s] come into the case, whether or not offered by the defendant, on which a reasonable doubt as to self-defense could be predicated, the state ha[s] the burden of negating self-defense as incident to its overall burden of proving guilt beyond a reasonable doubt." *State* v. *Jenkins,* 158 Conn. 149, 154, 256 A.2d 223 (1969). Here, the defendant did introduce evidence sufficient to trigger the state's burden of disproving justification. The trial court, recognizing this fact, instructed the jury extensively on self-defense. When the trial court read the elements of murder and of manslaughter to the jurors, it emphasized that any finding of guilt was "subject . . . to [its] instructions concerning justification." It charged on justification as follows: *"in all cases* you must consider the defense of justification, that is even though you found the elements of murder or of manslaughter, whether under the circumstances present, the defendant used reasonable force so as to absolve himself from criminal responsibility by the defense of justification." It further told the jurors that "it's incumbent upon the state to prove beyond a reasonable doubt that there was no defense of justification or no justification for the act." The court then explained the circumstances under which deadly force could be used.

When the jury requested reinstruction on the possible verdicts and also asked for clarification on the "difference among them elaborating on retreat and intent," the court again told the jurors that a finding of guilt was "subject . . . to [its] instructions on the question of justification." It told the jurors that "[w]hen a defendant raises a defense of justification, the state has the burden of disproving such defense beyond a reasonable doubt." Later, after giving the requested reinstruction on retreat, the court again charged that "[t]he burden is on the state to prove beyond a reasonable doubt that there was no justification." During its third charge to the jury, the court reinstructed on manslaughter and in so doing, it again told the jury that a guilty verdict was possible only if the state had met its burden of disproving justification beyond a reasonable doubt.

These instructions on self-defense as a justification for homicide were legally correct. The court properly emphasized that the state bore the burden of disproving self-defense and that the standard it was required to meet was proof beyond a reasonable doubt. *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982). Additionally, the charge was more than adequate to present the case to the jury in a fair and just manner. The defendant was entitled to no more. *State* v. *Candito,* supra.[6]

---

[6] The defendant, relying on *State* v. *Jenkins,* 158 Conn. 149, 256 A.2d 223 (1969), seems to be arguing that the absence of self-defense is an essential element of the crimes of murder and manslaughter and, therefore, the trial court was required to charge on this "essential element" when giving the other elements of the crimes. *Jenkins* does not, however, support the defendant's claim. That case merely stands for the general proposition discussed above: once the defendant raises self-defense, disproving that justification becomes an essential part of the state's case. *State* v. *Jenkins,* supra, 154.

The defendant next claims that the trial court erred by making clear, in its charge to the jury,[7] its erroneous conclusion that by returning to the club after his first confrontation with the victim, the defendant acted recklessly within the meaning of General Statutes § 53a-55.[8] In support of his argument that the trial court in essence directed a verdict on the element of recklessness, the defendant points to the following portion of the trial court's first supplemental charge: "Did he return [sic] recklessly in conduct which created a grave risk of death to another under circumstances evincing an extreme indifference to human life?"

The defendant is incorrect in claiming that through this instruction, the court directed the jury to find that the recklessness element had been proven. Rather, the court was merely instructing on the defense of justification and the requirement of retreat. In so doing, it referred to the possible verdicts and the factual issues of the case. This is apparent from an examination of the language of the charge which preceded that quoted by the defendant: "However, the concept of retreat is that which the court is instructing on and one of the issues before you are these particular questions. What was the state of mind of the defendant when he returned to Players After Dark at/or about 10:00 p.m.? Did he intend to cause Micky Mathis' death? Did he intend to cause Micky Mathis serious physical injury?

---

[7] The defendant also claims that the trial court erred by indicating this belief during argument with counsel outside the jury's presence. The trial court's beliefs, erroneous or not, do not constitute the basis for a claim of error. What properly can be challenged is the trial court's actions: a communication of its beliefs to the jury in a manner which in essence amounts to a directed verdict on the issue. Accordingly, we limit our review to a consideration of those grounds of error which challenge the trial court's instructions or comments to the jury.

[8] According to the defendant, the trial court erred in "numerous" aspects of its charge on retreat and recklessness. We review, however, only those portions of the charge to which the defendant refers specifically in his brief. Practice Book § 3060F (d) (2).

Did he return [sic] recklessly in conduct which created a grave risk of death to another under circumstances evincing an extreme indifference to human life?'' While the court did substitute the word "return" for the word "engage" when reading the statutory definition of manslaughter, it in no way indicated to the jury that the defendant had behaved recklessly by returning to the bar.

The defendant also challenges another section of the charge: "If the defendant knew there had been sufficient confrontation and I am speaking of [the early evening confrontation], to warrant a shootout, and that his presence even though words of provocation would not be explained would result in the act of provocation alone, he would not be warranted to justification [sic] in returning with that knowledge and a gun to challenge a shootout." The defendant claims that by so stating, the court, in effect, told the jury that the defendant had behaved recklessly by returning to the bar.

In this portion of the charge, the court did not direct the jury to find that the defendant's return to the club constituted recklessness. It merely instructed the jury on how to determine whether the defendant was the aggressor or whether he provoked the attack so as to be prohibited from claiming self-defense as a justification. The context in which the challenged language was given is as follows: "If the defendant went out to get a gun and had returned knowing that Micky would still be playing the second pinball machine and walked up to him quickly, as indicated by [the owner of the club] and [the barmaid] and pulled his gun and fired while Micky's hands were in the air, even though he may have precipitated some type of argument, there would be no justification. If the defendant knew there had been sufficient confrontation, and I am speaking of the [early evening confrontation], to warrant a shootout, and that his presence even though words of provocation would

not be explained would result in the act of provocation alone, *he would not be warranted to justification in returning with that knowledge and a gun to challenge a shootout.* If there had been threats, and this is the third example, if there had been threats to which he had passed off hundreds of times and had returned without the thought that there would be a confrontation and Micky had attempted to draw on him with such words like 'are you back again' or whether he made the motion to draw the gun by passing his right hand across in front of him or to his rear as if drawing for a gun and the defendant, as he testified, knew his reputation for violence, could be warranted in believing that it was necessary to defend himself, particularly if you determine Micky, by the testimony of others, was known to carry a gun and be violent and, therefore, an aggressor." (Emphasis added.)

This charge was not erroneous. It accurately presented the limits on self-defense as established by General Statutes § 53a-19 (c) (1) and (2): the defendant is not justified in using deadly force to defend against an attack he provokes, and he is not justified in using deadly physical force if he instituted the confrontation.[9] The instruction fairly presented the self-defense issue to the jury. *State* v. *Candito,* supra.

The defendant's sixth claim is that the trial court erred in charging the jury that it could consider manslaughter in the first degree in violation of General Statutes § 53a-55a (3) as a lesser included offense of murder. An instruction on a lesser included offense should be given where four preconditions are met: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first

---

[9] See footnote 5, supra.

committed the lesser; (3) there is some evidence, intro-
duced by either the state or the defendant, or by a com-
bination of their proofs, which justifies conviction of
the lesser offense; and (4) the proof on the element or
elements which differentiate the lesser offense from
the offense charged is sufficiently in dispute to permit
the jury consistently to find the defendant innocent of
the greater offense but guilty of the lesser." *State* v.
*Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).
Here, the defendant agrees that the first two prongs
of *Whistnant* were satisfied. He claims, however, that
manslaughter by recklessness should not have been
charged as a lesser included offense because neither
he nor the state ever claimed that the shooting was not
intentional.

Our Supreme Court has twice rejected arguments
similar to the one the defendant now presses. *State* v.
*Falby,* 187 Conn. 6, 28, 444 A.2d 213 (1982); *State* v.
*Maselli,* 182 Conn. 66, 73, 437 A.2d 836 (1980), cert.
denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d
801 (1981). In *State* v. *Maselli,* supra, the defendant,
a passenger in a taxi, killed the driver whom he believed
was about to pull a gun. The defendant acknowledged
that the shooting was intentional but claimed that he
acted in self-defense. The Supreme Court found that
a charge on manslaughter by recklessness was appro-
priate in those circumstances reasoning that "[t]he jury
might well have concluded that for the defendant to
have believed . . . that it was necesssary to fire eight
shots at point blank range was such a gross deviation
from the standard of conduct that a reasonable per-
son would observe in the situation as to constitute reck-
lessness." *State* v. *Maselli,* supra, 73. In *State* v. *Falby,*
supra, the Supreme Court found that charges on man-
slaughter in the second degree by recklessness and
criminally negligent homicide were warranted where
the defendant confessed to intentionally strangling a

nine year old girl. In his confession, the defendant indicated that after the child started bleeding, he became frightened and threw her on the ground. The court felt that the "evidence suggests at least a possibility that the defendant acted recklessly or with criminal negligence in leaving a child with her face in the dirt following [the] attack." *State* v. *Falby,* supra, 30. This was especially so given that there was evidence that the defendant had committed an aborted attack a year earlier, in which he allegedly also removed his hands from another victim's neck and threw her to the ground.

Here, as in *Falby* and *Maselli,* the admission by the defendant that he had acted intentionally did not prohibit the jury from finding that he acted recklessly also. Rather, the jury could have concluded that while the defendant did not intend to kill Mathis, his belief that he could protect himself only by firing four shots at Mathis "was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness." *State* v. *Maselli,* supra, 73. Additionally, the jury could have found that the conduct which resulted in the death was not limited to the actual shooting but rather encompassed the whole course of conduct the defendant engaged in: going into a crowded bar with a loaded gun; approaching the defendant, whether at his own initiative or by invitation, with a loaded gun; leaving the bar after the shooting without first securing medical attention for Mathis. The jury reasonably could have found that through this course of conduct, the defendant did not intend to kill Mathis, nor to cause him serious physical injury, but did recklessly engage in conduct which created a grave risk of causing his death and thereby did cause his death. The court did not err in charging the jury on manslaughter.

In his final claim, the defendant contends that the trial court erred in refusing to grant his motion for judgment of acquittal based on the insufficiency of the evidence of recklessness. We have carefully considered this claim and find it to be without merit.

There is no error.

In this opinion the other judges concurred.