STANLEY W. COOK *v.* STATE OF
MARYLAND

[No. 316, September Term, 1969.]

*Decided March 19, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas G. Bodie* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, State's Attorney for Harford County, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Clewell Howell, Jr.,* and *Stuart E. Hirsch, Assistant State's Attorneys for Baltimore County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The Grand Jury for Baltimore County presented that Stanley W. Cook (appellant) on 27 January 1969 feloniously, wilfully and of deliberately premeditated malice aforethought did kill and murder Joseph James Michael Cartier, Jr. The indictment returned charged the murder and eight related offenses. Upon appellant's suggestion of removal the case was removed to the Circuit Court for Harford County for trial. Md. Rule 738. Appellant waived trial by jury, was found guilty of murder in the second degree, and sentenced to 20 years. The questions presented go to the sufficiency of the evidence to sustain the conviction.

The report of the autopsy performed on Cartier gave the manner of death as homicide and the diagnosis was "Gunshot wound of chest with perforation of right lung and right hemothorax." The opinion of the Assistant Medical Examiner was that Cartier "died of a gunshot wound to the chest. The wound of entrance shows no evidence of close range firing."

The victim, 59 years of age, was the proprietor of a liquor store. Appellant was arrested and gave the police a signed statement. Appellant does not contest the admissibility of that statement. He said that on 27 January 1969 he had been drinking "off and on" from about 9:00 A.M. Shortly after 8:00 P.M. he asked some friends to drive him to his sister's house in Dundalk. On the way he requested they stop so he could get a six pack of beer at Dundalk Liquors. He knew the store as he grew up in Dundalk but did not know the proprietor. The statement reads:

"While the others waited I went in and asked for a six pack of National throw-a-ways. I was facing the counter and put two one dollar bills on same. He or the man behind the counter asked if I wanted cans or throw-a-ways and I said throw-a-ways. He went to the cooler and brought the beer back and sat it on the counter. He started to reach for the money and then he said, 'What is this a hold-up?' I looked at him and said, 'No man all I want is a six pack.' Then he started around the counter and said, 'You punk I will kill you' as he started toward me. I just stayed where I was standing and he was coming at me like a wild man, so I opened my jacket and pulled my gun, which is a .22 eight shot, I had under my belt. I said 'Stop where you are at' and he said 'That gun ain't loaded' and he kept coming. He was about seven feet away when I fired twice. He went down on the floor as I am positive I hit him. As I was leav-

ing I heard someone calling help—police. I was scared so I kept running across Dundalk Ave. toward the shoping center. George was waiting near the Post Office where he had let me out so I got back into the car and told him to move out. I got into the front seat but I didn't want them to get into trouble so I jumped back out and continued running south toward the church. I cut through a yard near the church and went down a couple alleys the second alley I hit there were three trash cans. I picked up the lid and it had saw-dust in it and this is where I put the gun and a box of bullets in it with the saw-dust."

He was shortly thereafter accosted by the police, frisked and released. He went to his sister's house, borrowed $10 and his brother-in-law drove him to a tavern where he had a drink. He went to his apartment, changed his jacket, and returned to the tavern. He was arrested there.

A homicide is felonious and the accountable perpetrator is culpable if it is murder or manslaughter. In this jurisdiction murder may be in the first or second degree. Murder which shall be in the first degree is specifically designated by statute.[1] And by statute, all murder not designated as in the first degree shall be deemed murder in the second degree. Md. Code, Art. 27, § 411. Manslaughter is homicide without malice aforethought; it is the absence of malice aforethought which reduces murder to manslaughter. *Chisley v. State*, 202 Md. 87, 105. It is firmly established that the law presumes all homicides to be committed with malice aforethought and to constitute murder in the absence of justification, excuse or some circumstances of mitigation. The burden is on the State to show the killing was wilful, deliberate and premeditated if the crime is to be elevated to first degree murder; the burden is on the accused to show circumstances of mitigation sufficient to reduce the offense to manslaughter.[2]

---

1. Md. Code, Art. 27, §§ 407, 408, 409, 410.
2. The burden is also on the accused to show that the killing

We discussed malice in *Lindsay v. State*, 8 Md. App. 100. We stated that malice is the intentional doing of a wrongful act to another without legal excuse or justification and includes any wrongful act done wilfully or purposely. A specific intent to kill, and thus with express malice, is not a requisite of murder; a person may commit murder without an actual intent to kill, for the law will infer malice in some unintentional killings. It has been consistently held, that in the absence of excuse, justification or a mitigating circumstance, malice is inferred from the use of a deadly weapon directed at a vital part of the body. 8 Md. App. 104-109.

Appellant does not deny his criminal agency; he admits that he killed Cartier. Nor does he claim excuse or justification which would make him not culpable, for he expressly concedes that the killing was not in self-defense. However, he argues that the homicide was not murder but manslaughter, contending that, by his statement, he met his burden of showing circumstances of mitigation. He asserts that the evidence was sufficient to establish that he killed, not with malice, but in passion, provoked by the actions of the victim.[3] In his brief he argues at length that as the State introduced the statement, it was bound by what he considered exculpatory matters in it unless it adduced evidence sufficient to show such matters untrue. He concludes that since the State did not prove such matters untrue, the trier of fact was obliged to accept them. We do not agree. It is firmly established and has been consistently followed that the weight to be given evidence and the credibility of witnesses are matters for the trier of fact. *Fulford v. State*, 8 Md. App. 270. The court as the trier of fact was not obliged to believe every assertion made as a fact by ap-

---

was justified or excusable. If he so shows the homicide is not felonious and he is not culpable. See *Whitehead v. State*, 9 Md. App. 7 (1970).

3. There was evidence that the counter in the store was 2 feet wide, 3 feet high and about 16 feet long and that if a person behind the counter desired to go to the front of the store, he would have to go around the counter or over the top of it.

pellant in his statement.[4] But even if it was, appellant is not helped. In our consideration of the sufficiency of the evidence to sustain the conviction we are bound by the clearly erroneous rule, Md. Rule 1086. *Williams v. State,* 5 Md. App. 450. Appellant's statement showed that the homicide was committed by a deadly weapon directed at a vital part of the victim's body. This gave rise to an inference of malice for appellant does not claim excusable or justifiable self-defense and we cannot say that the court was clearly erroneous on the evidence, even accepting the recounting of the facts and circumstances of the shooting as made by appellant, in finding that the circumstances did not show sufficient mitigation to overcome that inference of malice. "[No] provocation, however, grievous, will reduce a voluntary homicide to manslaughter, if the circumstances show that the slayer acted, not in the heat of blood, but from malice." *Clark and Marshall, Law of Crimes,* 6th Ed., § 10.11, p. 621. As the inference provided evidence of malice, the homicide was murder in the second degree.

We hold that the evidence in law was sufficient to sustain the conviction.

*Judgment affirmed.*

---

4. There is authority that uncontradicted evidence cannot be *disregarded* by either the jury or the court *if it is not inherently improbable. Franklin v. State,* 208 Md. 628, 633; *Rizzo v. State,* 201 Md. 206; *Frank v. State,* 189 Md. 591. This is not to say that the trier of fact in its consideration of such evidence may not weigh it and believe it or disbelieve it. And we point out that there is a distinction between (a) uncontradicted evidence which a trier of fact might misbelieve, and (b) uncontroverted or undisputed facts, which present only a question of law. Testimony may, in a narrowly verbal sense, be "uncontradicted", but still not "undisputed." It may be disputed as by being unaccepted or controverted and, so in the proper sense of the word, be contradicted. See *Edwards v. State,* 198 Md. 132, Memorandum on Motion for Reargument, at 158. We note in passing that, in any event, the court here could have properly found some of the facts asserted by appellant in his statement were inherently improbable.