# STATE OF CONNECTICUT *v.*
# MUHDYASIM ABDALAZIZ
## (SC 15771)

Callahan, C. J., and Borden, Norcott, Palmer and McDonald, Js.

Argued December 3, 1998—officially released April 20, 1999

*Susan M. Hankins*, assistant public defender, for the appellant (defendant).

*Paul J. Ferencek*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, assistant state's attorney, for the appellee (state).

*Opinion*

NORCOTT, J. In this certified appeal, we must decide whether the Appellate Court correctly concluded that the trial court: (1) properly refused to instruct the jury on the defendant's theory of imperfect self-defense; and (2) did not abuse its discretion in precluding the defendant from introducing into evidence certain of the victim's previous criminal convictions.[1] The defendant, Muhdyasim Abdalaziz, also known as Alfredo Cotto, was convicted by a jury of assault in the first degree in violation of General Statutes § 53a-59 (a) (1),[2] and

---

[1] The specific certified question in this appeal is: "Did the Appellate Court properly conclude that: (1) the trial court properly had refused to instruct the jury on the defendant's theory of 'imperfect self-defense'; and (2) the trial court did not abuse its discretion in precluding the defendant from introducing into evidence four of the victim's previous criminal convictions for the purpose of establishing the victim's violent character?" *State* v. *Abdalaziz*, 243 Conn. 902, 701 A.2d 334 (1997).

[2] General Statutes § 53a-59 provides in relevant part: "Assault in the first degree: Class B felony: Nonsuspendable sentences. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[3] The defendant appealed to the Appellate Court claiming, inter alia, "that the trial court improperly (1) denied the defendant's request for instructions on lesser included offenses, (2) denied the defendant's request to instruct the jury on a theory of 'imperfect self-defense,' [and] (3) improperly precluded the defendant from offering evidence of the victim's prior convictions . . . ." *State* v. *Abdalaziz*, 45 Conn. App. 591, 593–94, 696 A.2d 1310 (1997). The Appellate Court agreed with the defendant concerning the request for an instruction on lesser included offenses and reversed the judgment of the trial court on the assault count and remanded the case for a new trial on that charge. Id., 594. The Appellate Court further concluded that the defense of imperfect self-defense is not recognized in Connecticut; id., 601; and that the trial court had not abused its discretion in precluding the defendant from introducing into evidence certain of the victim's prior convictions in order to establish the victim's violent character. Id., 605. We granted the defendant's petition for certification limited to these issues; *State* v. *Abdalaziz*, 243 Conn. 902, 701 A.2d 334 (1997); and now affirm the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts that the jury reasonably could have found. "The victim, Michael Juarbe, and the defendant's wife, Carmen Rodriguez, had a five year relationship that ended in January, 1991. The defendant's wife had one daughter from this relationship with the victim. The victim had visitation rights with this daughter. In the summer of 1991, the defendant married Rodriguez. The defendant

---

[3] General Statutes § 29-35 provides in relevant part: "Carrying of pistol or revolver without permit prohibited. Exceptions. (a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

and the victim had several confrontations leading up to April, 1992.

"On April 7, 1992, the defendant drove to the victim's New Haven apartment at approximately 10 p.m. Upon arriving at the victim's apartment, the defendant rang the doorbell located at the back door of the victim's premises. When the victim looked out his window, the defendant yelled to him to come out of the house to talk. The victim dressed and went to the front lawn of the apartment where he found the defendant standing on the sidewalk. The victim noticed that the defendant's car was parked in front of the premises and two men were sitting inside the vehicle. The victim and the defendant began to argue about the victim's visitation rights with his daughter and about telephone calls that were made by the victim to the defendant's home. The defendant eventually sat in the front passenger seat of his car. From that location, the defendant pulled a loaded revolver from under the car's seat and fired approximately five shots at the victim from a distance of six to nine feet. The victim was struck by four of the bullets and sustained serious injuries. After shooting the victim, the defendant and his two companions drove away in the defendant's car." *State* v. *Abdalaziz,* supra, 45 Conn. App. 594.

I

The defendant first claims that the Appellate Court was incorrect when it affirmed the trial court's refusal to instruct the jury on his theory of "imperfect self-defense." According to that theory, if the jury found that the defendant had an honest but unreasonably held belief in the need to use deadly force, it could find that he acted with the requisite specific intent corresponding to the greater offense, but also could mitigate the defendant's guilt downward to an offense that would be consistent with a less culpable mental state. Specifically,

the defendant argues that the Appellate Court errone-
ously concluded that the defense of imperfect self-
defense is not recognized in Connecticut.[4] As support
for this contention, the defendant claims that, in *State*
v. *Maselli*, 182 Conn. 66, 437 A.2d 836 (1980), cert.
denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807
(1981), and *State* v. *Knighton*, 7 Conn. App. 223, 508
A.2d 772 (1986), both this court and the Appellate Court
implicitly have sanctioned the use of the imperfect self-
defense doctrine as a theory of defense, so as to mitigate
intentional conduct to the less culpable mental state of
recklessness. As a result, the defendant argues that the
court should have instructed the jury on an imperfect
self-defense theory of defense, by which, if the defen-
dant had an honest but unreasonable belief in the need
to use deadly force, his culpability would be reduced
from an intentional to a reckless mental state, thus
rendering him guilty only of a lesser offense. We con-
clude that the doctrine of imperfect self-defense is not
recognized in Connecticut and, therefore, was not avail-
able to the defendant. Accordingly, we affirm that por-
tion of the decision of the Appellate Court.

A

We begin our review by setting out the differences
between the doctrine of imperfect self-defense and an
instruction on lesser included offenses. It is well settled
that a defendant is entitled, under certain circum-
stances, to a jury instruction on lesser included
offenses. In *State* v. *Whistnant*, 179 Conn. 576, 588,
427 A.2d 414 (1980), we constructed a four prong test

---

[4] The defendant also takes issue with the Appellate Court's determinations
that imperfect self-defense does not apply to assault charges, and that the
instructions on the lesser included offenses achieve the same result for the
defendant. See *State* v. *Abdalaziz*, supra, 45 Conn. App. 603. Because we
conclude that the doctrine of imperfect self-defense is not available as a
theory of defense upon which the jury may receive an instruction, we need
not reach, and therefore, decline to address, either of these arguments.

whereby "[a] defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant *innocent of the greater offense but guilty of the lesser*." (Emphasis added.)

As the fourth prong of the *Whistnant* test reflects, a defendant can be found guilty *either* of the greater offense *or* the lesser offense, but not both.[5] A proper instruction on lesser included offenses is not, however, one that merely explains this "either or" requirement. In *State* v. *Sawyer*, 227 Conn. 566, 583, 630 A.2d 1064 (1993), we determined that, to assist the jury in making the transition from consideration of the greater offense to consideration of one or more lesser included offenses, the jury must receive an "acquittal first" instruction. "Only *after* it has confronted and unanimously completed the difficult task of deciding the guilt or innocence of the accused as to the charged offense should the jury consider lesser included offenses. Anything less dilutes the right of the state and the defendant to have the jury give its undivided attention and most

---

[5] This is in keeping with the self-evident principle that "the statutory definitions of intentionally and recklessly are mutually exclusive and inconsistent. . . . Where a determination is made that one mental state exists, to be legally consistent the other must be found not to exist." (Citations omitted; internal quotation marks omitted.) *State* v. *King*, 216 Conn. 585, 593–94, 583 A.2d 896 (1990), on appeal after remand, 218 Conn. 747, 591 A.2d 813 (1991).

serious deliberations to the offense with which the defendant is charged . . . ." (Emphasis added.) Id.[6]

This scheme, of acquittal on the greater charge as a condition precedent to deliberation of charges for offenses requiring a lesser specific mental state, is wholly separate from the doctrine of imperfect self-defense. In *Richmond* v. *State*, 330 Md. 223, 623 A.2d 630 (1993), the Maryland Supreme Court accurately pinpointed the distinction between these two principles. A lesser included offense instruction is applicable where "a defendant not entitled to mitigation may present as a defense evidence of an honestly held though objectively unreasonable belief that is inconsistent with the specific intent required to convict." Id., 234. In contrast, the doctrine of imperfect self-defense applies where "[a] defendant may intend the exact result he brings about, but be entitled to mitigation because of the circumstances that caused him to act." Id.

The doctrine of imperfect self-defense is a doctrine of mitigation. Simply put, unlike our acquittal first process required for a lesser included offense instruction, under the doctrine of imperfect self-defense a jury must find that the defendant acted with the requisite mental state corresponding to the greater offense before the jury can consider mitigating downward to an offense that is consistent with a less culpable mental state.

The Appellate Court did not focus on this distinction in reaching its conclusion that the doctrine of imperfect self-defense is not recognized in Connecticut. The court

---

[6] See also Criminal Jury Instruction Committee of Judges of the Superior Court, A Collection of Connecticut Selected Jury Instructions, Criminal (3d Ed. 1996) § 2.5, p. 2-10 ("Lesser Included Offenses . . . If you find that the state has proven beyond a reasonable doubt each of the essential elements of this crime of ____, you shall find the defendant guilty of the crime of ____ under the ____ count. However, *if you find the defendant not guilty* of the crime of ____ under this count, *you shall then consider* the lesser offense of ____ under the ____ count." [Emphasis added.]).

distinguished Connecticut from Maryland and California, two jurisdictions where the doctrine of imperfect self-defense is recognized, based upon its determination that our murder statute does not include the element of malice,[7] while the murder statutes of Maryland and California do include the element of malice.[8] *State* v. *Abdalaziz*, supra, 45 Conn. App. 601–603. Although the distinction essentially is accurate as to the jurisdictions discussed, it is nevertheless incomplete as a means of differentiating between the doctrine of imperfect self-defense and a lesser included offense instruction. The distinction, therefore, is not the proper means of determining whether the language in *Maselli* and *Knighton*, upon which the defendant relies, indicates Connecticut's adoption of the doctrine of imperfect self-defense. This is because in certain jurisdictions, such as Illinois, although the murder statute does not contain

---

[7] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[8] More specifically, both of these jurisdictions require a showing of malice, although Maryland does not use the term malice in the application of the statute itself. The California statute, Cal. Penal Code § 187 (a) (Deering 1985), provides: "Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." See, e.g., *In re Christian S.*, 7 Cal. 4th 768, 773, 872 P.2d 574, 30 Cal. Rptr. 2d 33 (1994) ("The vice is the element of malice; in its absence the level of guilt must decline. . . . The doctrines of imperfect self-defense and diminished capacity arose from this principle." [Citation omitted; internal quotation marks omitted.]).

The Maryland statute, Md. Code Ann., Crimes and Punishments § 407 (1998), provides: "First degree murder—Generally.

"All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind or wilful, deliberate and premeditated killing shall be murder in the first degree." As the statute is applied, malice is an indispensable element of murder. *Cook* v. *State*, 9 Md. App. 214, 217, 263 A.2d 33 (1970). For application of the doctrine of imperfect self-defense in Maryland, see, e.g., *Richmond* v. *State*, supra, 330 Md. 227, quoting *State* v. *Faulkner*, 301 Md. 482, 486, 483 A.2d 759 (1984) (" '[Imperfect self-defense] operates to negate malice, an element the State must prove to establish murder. As a result, the successful invocation of this doctrine does not completely exonerate the defendant, but mitigates murder to voluntary manslaughter.' ").

the element of malice, the doctrine of imperfect self-defense is nonetheless recognized.[9] The application of the doctrine in Illinois illustrates that it is *mitigation* that distinguishes the doctrine of imperfect self-defense from a lesser included offense instruction. "In Illinois, a person commits second degree murder when he commits the offense of first degree murder and either of two mitigating statutory factors is present. The statutory factor applicable in this cause is that, at the time of the killing, the defendant believed the circumstances to be such that, if they existed, they would justify or exonerate the killing but his belief was unreasonable." *People* v. *Bosek*, 210 Ill. App. 3d 573, 594, 569 N.E.2d 551 (1991). "[I]n order for the jury to reach the issue of whether the defendant is guilty of second degree murder, it must already have found him guilty of first degree murder beyond a reasonable doubt." Id., 595; see also *People* v. *Wright*, 218 Ill. App. 3d 764, 776–77, 578 N.E.2d 1090 (1991).

Other states recognizing the doctrine of imperfect self-defense manifest this requirement as well. See, e.g., *People* v. *Flannel*, 25 Cal. 3d 668, 674, 603 P.2d 1, 160 Cal. Rptr. 84 (1979) (" '[a]n honest but unreasonable belief that it is necessary to defend oneself from imminent peril to life or great bodily injury negates malice aforethought, the mental element necessary for murder,

[9] The Illinois statute, 720 Ill. Comp. Stat. Ann. 5/9-1 (West 1998 Cum. Pocket Part), provides in relevant part: "First degree murder . . . . (a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:

"(1) he either intends to kill or do great bodily harm to that individual or another or knows that such acts will cause death to that individual or another . . . ." Application of the murder provision in Illinois does not require a showing of malice, but rather, of specific intent. See *People* v. *Johnson*, 66 Ill. App. 3d 84, 92, 383 N.E.2d 648 (1978) ("[t]he mental state necessary for the conviction of murder need only be a knowledge or intent that the acts performed by the defendant created a strong probability of causing death or great bodily harm").

so that the chargeable offense is *reduced* to manslaughter' " [emphasis altered]); *In re Christian S.*, 7 Cal. 4th 768, 773, 872 P.2d 574, 30 Cal. Rptr. 2d 33 (1994) (same); *Richmond* v. *State*, supra, 330 Md. 228 ("the doctrine of imperfect self-defense, like that of hot-blooded response to adequate provocation, does not serve to exonerate a defendant, 'but mitigates murder to voluntary manslaughter' "); *State* v. *Abeyta*, 120 N.M. 233, 240, 901 P.2d 164 (1995) ("[I]f the jury rejects the theory of self-defense, it may still find the defendant acted under provocation of fear and may mitigate the charge of murder to the lesser charge of voluntary manslaughter. . . . [T]he claim of imperfect self-defense simply presents an issue of mitigating circumstances that may reduce murder to manslaughter." [Citations omitted; internal quotation marks omitted.]).

Requiring a finding of the requisite mental state corresponding to the greater offense as a condition precedent to reduction to an offense of lesser culpability is consistent with our own construction of the concept, as reflected in our treatment of extreme emotional disturbance as a basis for mitigation of a murder charge to manslaughter. General Statutes § 53a-54a[10] explicitly

---

[10] The defense of extreme emotional disturbance pertains to two sections of the Penal Code. General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude conviction of, manslaughter in the first degree or any other crime. . . ."

General Statutes § 53a-55 (a) (2) provides that a person is guilty of manslaughter in the first degree when "with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the

authorizes the affirmative defense of extreme emotional disturbance as a permissible means of mitigating the offense of murder to the lesser offense of first degree manslaughter. Under an instruction for extreme emotional disturbance, as with imperfect self-defense as applied by other jurisdictions, the defendant must be found to have intentionally caused the death of the victim before the crime can be mitigated downward to a lesser offense.[11] In commenting on the United States Supreme Court's determination in *Patterson* v. *New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), that it was permissible to place the burden of proof for extreme emotional disturbance on the defendant, we stated that "the defense of extreme emotional disturbance does not serve to negate intent, but rather is raised to establish circumstances that mitigate culpability." *State* v. *Elliott*, 177 Conn. 1, 6, 411 A.2d 3 (1979). "The purpose of the defense is to render the accused less culpable because his *intentional* acts were caused by an extreme emotional disturbance." (Emphasis added.) *State* v. *D'Antuono*, 186 Conn. 414, 421, 441 A.2d 846 (1982).

Thus, the critical question in evaluating both *State* v. *Maselli*, supra, 182 Conn. 66, and *State* v. *Knighton*,

proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection . . . ."

[11] Criminal Jury Instruction Committee of Judges of the Superior Court, A Collection of Connecticut Selected Jury Instructions, Criminal (3d Ed. 1996) § 5.2, p. 5-3, provides in relevant part: "Affirmative Defense of Extreme Emotional Disturbance § 53a-54a (a) and § 53a-55 (a) (2) . . . If you find that the defendant has sustained his burden of proving his defense by a preponderance of the evidence, then you must find him not guilty of murder. Furthermore, if you also find that the state has proven beyond a reasonable doubt that the defendant intended to cause the death of      , and that he did cause the death of      , but under circumstances that do not constitute murder because he was acting under the influence of extreme emotional

supra, 7 Conn. App. 223, is whether this court or the Appellate Court endorsed a mitigation scheme or an acquittal first scheme, in the event that the defendant presents evidence that he held an honest but objectively unreasonable belief in the need to use deadly physical force.

The defendant claims that this court adopted the doctrine of imperfect self-defense on the basis of our statement in *Maselli* that "[t]he jury might well have concluded that for the defendant to have believed under the circumstances revealed by the evidence that the victim was about to use deadly force upon him so that it was necessary to fire eight shots at point blank range was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness." *State* v. *Maselli*, supra, 182 Conn. 73. We disagree, and instead, interpret the relevant portions of that decision to stand for the proposition that, if evidence is presented that the defendant had an honest but unreasonable belief in the need to use physical force, such evidence may be sufficient for the jury to find the defendant innocent of the greater crime for which specific intent is required, and guilty of the lesser included offense for which recklessness is required, and therefore, the jury should receive a *Whistnant* lesser included offenses instruction on that basis.

In *Maselli*, the defendant, a passenger sitting in the front seat of a taxi, killed the driver of the taxi by firing eight shots from a pistol at close range.[12] Id., 68. After

disturbance, you must find the defendant guilty of manslaughter in the first degree. . . ."

[12] The circumstances surrounding the shooting in that case included the following: "The defendant testified that the driver appeared depressed but that his own mood was optimistic. The driver said something to the effect that there was no hope for the world. The defendant remarked, 'Only the devil talks like that.' The driver responded, 'I am the devil' and reached to his left side with his right hand to grasp what the defendant imagined was

a jury trial, the defendant was found guilty of manslaughter in the first degree in violation of General Statutes § 53a-55, as a lesser offense included in the charge of murder in violation of § 53a-54a (a). The defendant appealed claiming, inter alia, "that the two kinds of manslaughter in the first degree submitted to the jury[13] [were] not properly included in the charge of intentional murder set forth in the indictment . . . ." *State* v. *Maselli*, supra, 182 Conn. 68. We concluded that the charge under § 53a-55 (a) (3) properly was included in the charge as a lesser included offense,[14] specifically stating that as a matter of law, "any lesser degree of homicide may be considered by the trier, subject to the requirements of *State* v. *Whistnant*, [supra, 179 Conn. 585], that the evidence does support a conviction of the lesser included offense and that the elements differentiating the lesser offense are sufficiently in dispute to justify finding the defendant *inno-*

his .44 magnum. The defendant testified that when he saw the pistol in the driver's right hand pointing in his general direction, he drew his own gun, struck the driver's right hand which held the pistol and fired the entire clip of bullets in his own weapon at the victim." *State* v. *Maselli*, supra, 182 Conn. 69–70.

[13] The jury was instructed on manslaughter in the first degree in violation of § 53a-55 (a) (1) and (3). General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

General Statutes § 53a-3 (13) defines the mental state of recklessness as follows: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

[14] The court also concluded that the jury properly was instructed on manslaughter in the first degree under § 53a-55 (a) (1). *State* v. *Maselli*, supra, 182 Conn. 73. That issue is not relevant to the present analysis.

*cent of the greater offense but guilty of the lesser."* (Emphasis added.) *State* v. *Maselli,* supra, 72.

We then noted that the defendant did not make any claim in his brief that the evidence would not support a conviction of manslaughter under § 53a-55 (a) (3). Id., 73. In other words, the defendant did not contend that, even if we found as a matter of law that a charge under § 53a-55 (a) (3) properly could have been included as a lesser offense of murder under § 53a-54a, the actual evidence before the jury would not have permitted a lesser included offense instruction for § 53a-55 (a) (3). "During argument, however, the question did arise of the sufficiency of the evidence to support a finding that the defendant's avowedly intentional shooting of the victim constituted 'reckless' conduct creating a grave risk of death to the victim under circumstances evincing an extreme indifference to human life, as proscribed by subsection (a) (3)." Id. We concluded that there was sufficient evidence to permit a *Whistnant* lesser included offense instruction on § 53a-55 (a) (3), stating: "It appears that the defendant claimed neither insanity nor extreme emotional disturbance at the trial, but sought acquittal solely upon the ground of self-defense. The trial court instructed the jury upon the use of deadly physical force in defense of the person in accordance with General Statutes § 53a-19, charging that '[i]t is the facts as they reasonably appear to the defendant at the time he acted which measure the existence of the right of self-defense.' The jury might well have concluded that for the defendant to have believed under the circumstances revealed by the evidence that the victim was about to use deadly force upon him so that it was necessary to fire eight shots at point blank range was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness. General Statutes § 53a-3 (13)." Id., 73.

The previously quoted description by the Maryland Supreme Court in *Richmond,* distinguishing between the doctrine of imperfect self-defense and the application of a lesser included offenses instruction, aptly describes the quoted passage from *Maselli.* "[A] defendant not entitled to mitigation may present as a defense evidence of an honestly held though objectively unreasonable belief that is inconsistent with the specific intent required to convict." *Richmond* v. *State,* supra, 330 Md. 234. This is exactly what we concluded in the quoted passage from *Maselli.* Nothing in the language of *Maselli* suggests our endorsement of the doctrine of imperfect self-defense, that is, that under Connecticut law, the jury in *Maselli* could have found that the defendant intended to cause the death of the victim and so caused it, and then have had his culpability *mitigated* to a lesser charge of first degree manslaughter in violation of § 53a-55 (a) (3).

We reach a parallel conclusion concerning the defendant's argument as to the Appellate Court's similar statements in *Knighton.* In that case, the evidence at trial showed that the defendant and victim had been involved in a confrontation earlier in the day, and later that evening returned to the same bar. *State* v. *Knighton,* supra, 7 Conn. App. 224. Although some witnesses testified that they did not see the victim with a gun, the defendant asserted that the victim was about to draw a gun on him, and therefore, he went over to where the victim stood, drew his own gun and shot the victim four times. Id., 225. The defendant was charged with murder in violation of § 53a-54a, but was convicted, after a jury trial, of manslaughter in the first degree in violation of § 53a-55. Id., 224.

On appeal, the defendant claimed, inter alia, that the trial court incorrectly charged the jurors that they could consider manslaughter in the first degree as a lesser included offense of murder. Id., 225. The Appellate

Court rejected this argument, relying in large part on our holding in *Maselli*. Id., 236–37. The court stated—and it is upon this statement that the defendant in the present case relies—that "the jury could have concluded that while the defendant did not intend to kill [the victim], his belief that he could protect himself only by firing four shots at [the victim] 'was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness.' *State* v. *Maselli*, supra, [182 Conn.] 73." *State* v. *Knighton*, supra, 7 Conn. App. 237. We interpret this statement to mean simply that the jury had before it evidence by which it could have concluded that the defendant did not intend to kill the victim, that is, *he did not have the requisite mental state for a guilty verdict under the specific intent crime of murder*, but instead, he acted with the lesser mental state required in order to convict the defendant of manslaughter in the first degree in violation of § 53a-55 (a) (3).

The Appellate Court went on to hold that "[a]dditionally, the jury could have found that the conduct which resulted in the death was not limited to the actual shooting but rather encompassed the whole course of conduct the defendant engaged in: going into a crowded bar with a loaded gun; approaching the defendant, whether at his own initiative or by invitation, with a loaded gun; leaving the bar after the shooting without first securing medical attention for [the victim]. The jury reasonably could have found that through this course of conduct, the defendant did not intend to kill [the victim], nor to cause him serious physical injury, but did recklessly engage in conduct which created a grave risk of causing his death and thereby did cause his death. The court did not err in charging the jury on manslaughter." Id. This statement also explicitly reflects the principles embodied in the application of a lesser included offense

instruction, whereby the jury could have found that "the defendant did not intend to kill [the victim], nor to cause him serious physical injury"; id.; that is, the defendant did not have the requisite mental state for a finding of guilt on the greater offense. Nothing in the language of *Knighton* even implicitly suggests that the Appellate Court determined a process of mitigation would be permissible in these circumstances.

Unlike the mitigation scheme for extreme emotional disturbance, the doctrine of imperfect self-defense is not a part of our Penal Code.[15] Further, the appellate courts of this state have never recognized explicitly the doctrine of imperfect self-defense nor, contrary to the defendant's claims, have we recognized it implicitly. We conclude, therefore, that both *Maselli* and *Knighton* stand for the proposition that a defendant may present as a defense evidence of an honestly held though objectively unreasonable belief that is inconsistent with the specific intent required to convict on the greater offense and, therefore, if acquitted of that greater offense, the defendant may have the jury instructed on lesser

---

[15] Turning to the Model Penal Code for support of his interpretation of *Maselli* and *Knighton*, the defendant also contends that our holding in *Maselli* is similar to § 3.09 of the Model Penal Code (Official Draft and Rev. Comments 1985), which provides: "When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish justification under Sections 3.03 to 3.08 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief that is material to the justiciability of his use of force, the justification afforded by those Sections is unavailable in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices to establish culpability."

Model Penal Code § 3.09 (2), as further explained in comment (2) to § 3.09 (2), does propose the application of mitigation where the actor's belief in the need for physical force, though honestly held, is not reasonable. We read it as similar, not to our language in *Maselli*, but to our use of mitigation in the scheme of extreme emotional disturbance. Compare General Statutes § 53a-54a (a); see footnote 10 of this opinion. We are unpersuaded, therefore, that the Model Penal Code's approach in this area should alter our reading of *Maselli* and *Knighton*.

included offenses in accordance with the requirements of *Whistnant*.[16]

## B

While we have concluded that the doctrine of imperfect self-defense is not available to the defendant as a matter of law, we also note that the instruction actually sought at trial in the present case, although labeled as a request for an imperfect self-defense theory of defense, was simply a request for a *Maselli*-type lesser included offense jury instruction.[17]

---

[16] In his concurring opinion, Justice Borden cogently identifies a number of problems inherent in *Maselli* and *Knighton*, but notes that we did not certify the question of whether these cases should be overruled. We agree with the essence of his substantive remarks, and likewise believe it would not be appropriate for us to consider overruling these cases in the course of this decision. Accordingly, in this opinion we simply have sought to harmonize these two cases with the existing body of law in this area to the extent that harmony is possible, and leave for another day the resolution of the issues raised in Justice Borden's concurrence.

[17] The request to charge provided in relevant part:

"14. Imperfect Self-Defense

"The defendant also requests lesser included offenses based upon the legal theory o[f] imperfect self-defense. A person acts recklessly with respect to a result described by a statute when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur. Recklessness requires that the jury find that the risk is so great that disregarding it was a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

"Acting recklessly is inconsistent with acting intentionally. A person cannot both have a result as his conscious objective or purpose, and be disregarding the risk that the result will occur.

"Recklessness may also be shown by evidence permitting an inference that the defendant did not intend to kill or intend to seriously injure [the victim], but mistakenly believed that he was acting in self-defense. The law permits acts in self-defense if the defendant's belief that he needed to defend himself was reasonable, and his response was reasonable. If either his belief or his response were unreasonable, the law recognizes what is called imperfect self-defense. Imperfect self-defense does not completely eliminate the defendant's liability, but it reduces that culpability to the level of recklessness. Imperfect self-defense constitutes recklessness when it demonstrates that the defendant's act, although not undertaken with a conscious objective to cause death or injury 'was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to

The defendant's references to the doctrine of imperfect self-defense in the request to charge are limited to the statements that "[i]f either [the defendant's] belief or his response were unreasonable, the law recognizes what is called imperfect self-defense. Imperfect self-defense does not completely eliminate the defendant's liability, but it reduces that culpability to the level of recklessness. Imperfect self-defense constitutes recklessness when it demonstrates that the defendant's act, although not undertaken with a conscious objective to cause death or injury 'was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness.' "

These statements amount to nothing more than a request for a *Maselli*-type lesser included offense

constitute recklessness.' In deciding whether the defendant thought he was acting in self-defense, the jury should consider all of the circumstances surrounding the shooting, including the history between [the defendant], his wife, Carmen Rodriguez and [the victim] and [the victim's] convictions for crimes of violence.

"Based upon the foregoing, the defendant requests the following lesser included offenses . . . .

"With respect to Count Two:

"a. [General Statutes] § 53a-60 (a) (3)

"1. the defendant acted recklessly;

"2. in that although he believed he was justified in using deadly physical force;

"3. that belief was not reasonable;

"4. because of his reckless action, he caused serious physical injury to [the victim]; and,

"5. he caused that serious physical injury by use of a deadly weapon.

"b. [General Statutes] § 53a-60a

"1. the defendant acted recklessly;

"2. in that although he believed he was justified in using deadly physical force;

"3. that belief was not reasonable;

"4. because of his reckless action, he caused serious physical injury to [the victim]; and,

"5. he caused that serious physical injury by use of a deadly weapon.

"6. and in the commission of such offense he uses or threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver or other firearm."

instruction. In the first sentence, the defendant incorrectly states that the imperfect self-defense doctrine is recognized in Connecticut. In the second sentence, he accurately describes the doctrine—as it exists in other jurisdictions—as one by which the defendant's culpability may be reduced, that is, mitigated. The third sentence essentially rephrases our statements in *Maselli*, and as such, constitutes a request for a *Whistnant* lesser included offense instruction. The same is true of the text of the actual instructions sought.[18] The proposed instructions state that the defendant had an honest but unreasonable belief in the need to use deadly force and, therefore, he could be found guilty of the lesser included offenses of assault in the second degree in violation of General Statutes § 53a-60 (a) (3),[19] and assault in the second degree with a firearm in violation of General Statutes § 53a-60a.[20] This also constitutes a request for a *Whistnant* instruction consistent with our decision in *Maselli*. Simply put, that which the defendant actually sought by his requested charge of "imperfect self-defense" is exactly the lesser included offense charge which the Appellate Court already has determined he is entitled to on remand.

---

[18] See footnote 17 of this opinion for the relevant text of the defendant's request to charge.

[19] General Statutes § 53a-60 provides in relevant part: "Assault in the second degree: Class D felony. (a) A person is guilty of assault in the second degree when . . . (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

[20] General Statutes § 53a-60a provides in relevant part: "Assault in the second degree with a firearm: Class D felony: One year not suspendable. (a) A person is guilty of assault in the second degree with a firearm when he commits assault in the second degree as provided in section 53a-60, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. No person shall be found guilty of assault in the second degree and assault in the second degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information. . . ."

## II

The defendant's second claim is that the Appellate Court improperly concluded that the trial court did not abuse its discretion in precluding him from introducing into evidence four of the victim's previous criminal convictions for the purpose of establishing the victim's violent character. We conclude that the trial court did not abuse its discretion. Accordingly, we affirm the decision of the Appellate Court as to this issue.

The defendant sought to admit five misdemeanor offenses of which the victim had been convicted, namely, (1) assault in the third degree in violation of General Statutes § 53a-61,[21] committed against the defendant in October, 1991, (2) assault in the third degree in violation of § 53a-61, committed against the victim's sister in April, 1990, (3) criminal trespass in the first degree in violation of General Statutes § 53a-107,[22] by violating a restraining order obtained by Rodriguez in March, 1990, (4) breach of the peace in violation

[21] General Statutes § 53a-61 provides in relevant part: "Assault in the third degree: Class A misdemeanor. (a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon. . . ." Although the legislature has made technical changes to § 53a-61 since 1991, the date of the victim's conviction, the statute has remained substantively the same. Reference here is to the current revision of that statute.

[22] General Statutes § 53a-107 provides in relevant part: "Criminal trespass in the first degree: Class A misdemeanor. (a) A person is guilty of criminal trespass in the first degree when: (1) Knowing that he is not licensed or privileged to do so, he enters or remains in a building or any other premises after an order to leave or not to enter personally communicated to him by the owner of the premises or other authorized person; or (2) he enters or remains in a building or any other premises in violation of a restraining order issued pursuant to section 46b-15 or a protective order issued pursuant to section 46b-38c or 54-1k by the Superior Court. . . ." Although the legislature has made technical changes to § 53a-107 since 1990, the date of the victim's conviction, the statute has remained substantively the same. Reference here is to the current revision of that statute.

of General Statutes § 53a-181[23] in March, 1990, and (5) assault in the third degree in violation of § 53a-61, committed against Rodriguez in March, 1988. The defendant sought admission of these prior convictions on the ground that, as convictions for violent crimes, they were admissible on the issue of whether the victim was the initial aggressor, pursuant to our decision in *State* v. *Miranda*, 176 Conn. 107, 109–10, 405 A.2d 622 (1978). The trial court admitted the conviction for assault in the third degree against the defendant in October, 1991, but excluded the four remaining misdemeanor convictions based on their dissimilarity from the incident of aggression at issue, and further, because, according to the trial court, "[their] relevance, if any, is minimal, and [their] prejudice is substantial," such that their admission would do nothing but "arouse the jury against the victim."

"In *State* v. *Miranda*, [supra, 176 Conn. 109–10], we held that evidence of a homicide victim's violent character, regardless of the extent of the accused's knowledge of such character, may be offered as evidence by the accused to show that the victim was the aggressor in

---

[23] General Statutes § 53a-181 provides in relevant part: "Breach of the peace: Class A or B misdemeanor. (a) A person is guilty of breach of the peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public and hazardous or physically offensive condition by any act which he is not licensed or privileged to do; or (7) places a nonfunctional imitation of an explosive or incendiary device in a public place. For purposes of this section, 'public place' means any area that is used or held out for use by the public whether owned or operated by public or private interests. . . ." Although the legislature has made technical changes to § 53a-181 since 1990, the date of the victim's conviction, the statute has remained substantively the same. Reference here is to the current revision of that statute.

their encounter. Although, in certain circumstances, the victim's prior convictions of crimes of violence may be admitted, we emphasized that the accused was not authorized 'to introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. . . .' *State* v. *Miranda*, supra, 114." *State* v. *Bember*, 183 Conn. 394, 399, 439 A.2d 387 (1981). We also have concluded that the trial court may exclude merely cumulative evidence related to a homicide victim's character. *State* v. *Mason*, 186 Conn. 574, 581, 442 A.2d 1335 (1982).

Moreover, "the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." *State* v. *Miranda*, supra, 176 Conn. 114; see also *State* v. *Miller*, 202 Conn. 463, 482, 522 A.2d 249 (1987); *State* v. *Maldonado*, 193 Conn. 350, 365, 478 A.2d 581 (1984). It is well settled that our review is limited to whether there was an abuse of that discretion. See *State* v. *Small*, 242 Conn. 93, 109–10, 700 A.2d 617 (1997); *State* v. *Carter*, 228 Conn. 412, 430–31, 636 A.2d 821 (1994).

The victim in the present case was the former boyfriend of Rodriguez and the father of her child. The alleged aggression was the culmination of an ongoing domestic dispute between the victim and the defendant. It was reasonable for the trial court to have determined that the four misdemeanor convictions were neither sufficiently similar in nature to the alleged aggression, nor sufficiently relevant, to be admitted. Accordingly, we conclude that the trial court did not abuse its discretion in excluding the victim's four prior convictions on that basis. In so deciding, however, we note that in the course of the new trial that the defendant will receive on remand, our determination that the trial court's evidentiary ruling did not constitute an abuse of discretion should not be understood to mean that this evidence

*must* be excluded. The resolution of that evidentiary question in the course of the new trial shall remain within the discretion of the trial court.

The judgment of the Appellate Court is affirmed.

In this opinion CALLAHAN, C. J., and BORDEN and PALMER, Js., concurred.

BORDEN, J., with whom CALLAHAN, C. J., and PALMER, J., join, concurring. I agree fully with and join the majority opinion. I write separately only to express my view that this case demonstrates an anomaly in our criminal jurisprudence that, when an appropriate case presents it again, should be eliminated. That anomaly was introduced into our law by this court's decision in *State* v. *Maselli*, 182 Conn. 66, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981), and followed by the Appellate Court in *State* v. *Knighton*, 7 Conn. App. 223, 508 A.2d 772 (1986). The anomaly is that, on facts such as those presented in this case and in both *Maselli* and *Knighton*, where the homicidal conduct of the defendant would not permit a rational inference of a lesser state of mind than intent to kill, the court is permitted nonetheless to give a lesser included offense instruction permitting the jury to find that the defendant acted with a reckless state of mind. In my view, *Maselli* was ill-considered and wrongly decided, is inconsistent with the statutory concept of recklessness and with later cases that properly analyze the question involved, and should be overruled. I recognize, however, that we did not certify any such question and, therefore, it would be inappropriate to do so in the present case.

In *State* v. *Maselli*, supra, 182 Conn. 68, the defendant, who was charged with murder, had shot and killed the driver of a taxicab in which he was the sole passenger. The defendant "fired eight bullets from a .32 caliber semi-automatic revolver at close range, six of which

struck the victim in the head, face and neck." Id. On the basis of that undisputed evidence, we affirmed the trial court's instruction of the lesser included offense of manslaughter in the first degree under General Statutes § 53a-55 (a) (3), which provides: "[U]nder circumstances evincing an extreme indifference to human life, [the defendant] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." We stated: "The jury might well have concluded that for the defendant to have believed under the circumstances revealed by the evidence that the victim was about to use deadly force upon him so that it was necessary to fire eight shots at point blank range was such a gross deviation from the standard of conduct that a reasonable person would observe in the situation as to constitute recklessness. General Statutes § 53a-3 (13)."[1] *State* v. *Maselli*, supra, 73.

The Appellate Court properly followed the rule of *Maselli* in *State* v. *Knighton*, supra, 7 Conn. App. 225, which involved a barroom killing in which it was undisputed "that the defendant went over to where [the victim] was standing, drew a gun and shot [the victim] four times." The court stated: "[T]he admission by the defendant that he had acted intentionally did not prohibit the jury from finding that he acted recklessly also. Rather, the jury could have concluded that while the defendant did not intend to kill [the victim], his belief that he could protect himself only by firing four shots at [the victim] 'was such a gross deviation from the standard of conduct that a reasonable person would

---

[1] General Statutes § 53a-3 (13) provides: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ."

observe in the situation as to constitute recklessness.'
*State* v. *Maselli*, supra, [182 Conn.] 73." *State* v.
*Knighton*, supra, 237.

Without belaboring the points, it is my view that there
are several closely related fundamental flaws in the
reasoning underlying *Maselli*. First, it defies both reality
and common sense to say that, when a defendant pumps
eight bullets into the head, face and neck of a victim
from close range, the jury *reasonably* could find that
he acted with anything other than the intent to kill.

Second, the *Maselli* reasoning justifying an instruc-
tion on recklessness misconstrues that concept. Unlike
intention, which requires that the actor's "conscious
objective [be] to cause [the] result or to engage in [the]
conduct"; General Statutes § 53a-3 (11);[2] "[a] person
acts 'recklessly' with respect to a result or to a circum-
stance described by a statute defining an offense *when
he is aware of and consciously disregards a substan-
tial and unjustifiable risk that such result will occur
or that such circumstance exists.* The risk must be of
such nature and degree that disregarding it constitutes
a gross deviation from the standard of conduct that a
reasonable person would observe in the situation
. . . ." (Emphasis added.) General Statutes § 53a-3 (13).
The reasoning of *Maselli* in effect collapses the first
sentence into the second, and ignores the effect of the
first. The concept embodied by the first sentence is
that, *unlike intention*, which requires a conscious
objective to bring about the proscribed result, reckless-
ness requires an awareness and conscious disregard
of the proscribed substantial and unjustifiable risk. Of
course, when someone intentionally kills someone else
he acts grossly inconsistent with what a reasonable

---

[2] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with
respect to a result or to conduct described by a statute defining an offense
when his conscious objective is to cause such result or to engage in such
conduct . . . ."

person would do in the same situation. That alone, however, is an insufficient basis on which a jury reasonably can find that he *also* acted with the kind of conscious disregard required by the definition of recklessness.

Third, the *Maselli* reasoning makes a mockery of the fourth requirement for a lesser included offense instruction, namely, that "the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury *consistently* to find the defendant innocent of the greater offense but guilty of the lesser." (Emphasis added.) *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). Although we recognize, in our lesser included offense jurisprudence, that evidence of states of mind may often permit differing reasonable inferences and, therefore, despite their doctrinal differences, they may be presented to the jury as lesser included states of mind; *State* v. *Rodriguez*, 180 Conn. 382, 404–408, 429 A.2d 919 (1980); the evidence must be "reasonably susceptible" of such inferences. Id., 404. It is fanciful, in my view, to say that, on facts such as those in *Maselli, Knighton* and the present case, the evidence is reasonably susceptible of an inference of recklessness, rather than intent to kill.

Fourth, the reasoning of *Maselli* is inconsistent with cases such as *State* v. *Crafts*, 226 Conn. 237, 250, 627 A.2d 877 (1993), in which we rejected the defendant's claim that the evidence would have permitted a lesser included instruction on manslaughter, as opposed to the charge of murder. Our reasoning in that case was, properly in my view, that the evidence would not have permitted the jury reasonably to conclude that the defendant acted recklessly, rather than intentionally, in causing the victim's death. Id., 251; see also *State* v. *Rasmussen*, 225 Conn. 55, 72, 621 A.2d 728 (1993); *State* v. *Smith*, 212 Conn. 593, 608–609, 563 A.2d 671 (1989);

but see *State* v. *Sivri*, 231 Conn. 115, 139, 646 A.2d 169 (1994) (evidence would allow jury reasonably to infer defendant acted with lesser intent).

Eventually, we should eliminate this anomaly in our law. It only serves to permit a jury to render a verdict based on something other than a rational view of the evidence.

MCDONALD, J., concurring. I concur in the majority opinion. I only wish to add that under this state's Penal Code and our cases it is neither necessary nor desirable to adopt a theory of imperfect self-defense in this state.